UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 7 - 2016 ★

BROOKLYN OFFICE

----------------------------------------------------------X

JOSE RIOS,

                              Petitioner,                    NOT FOR PUBLICATION
                                                             **MEMORANDUM & ORDER**
           -against-                                         13-CV-5577 (CBA)

UNITED STATES OF AMERICA,

                              Respondent.

----------------------------------------------------------X

**AMON, United States District Judge:**

On October 7, 2013, Jose Rios, proceeding <u>pro se,</u> filed a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his federal sentence.

(D.E. # 1 ("Pet.").) Rios was convicted, following a jury trial, of one count of being a felon in

possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and was sentenced principally to

fifteen years' imprisonment. <u>United States v. Rios</u>, No. 09-CR-369 (CBA), D.E. # 65–67 ("Trial

Tr."), D.E. # 107 ("Sentencing Tr."). Rios subsequently filed a number of requests for discovery.

(D.E. # 2, 10, 12, 17-1.) On June 7, 2016, this Court granted Rios's petition in part and scheduled

him for resentencing. (D.E. # 25.) As stated in the Court's June 7 Order, (<u>id.</u> at 2), and for the

reasons set forth below, the remainder of Rios's petition is denied.

## BACKGROUND

### I.    The Arrest

The following facts were presented at Rios's September 2009 trial. On May 2, 2009, a

team of officers from the 73rd Precinct of the New York City Police Department ("NYPD") were

patrolling Pitkin Avenue in Brooklyn, New York. Trial Tr. 38, 129, 144–45. Around 12:30 p.m.,

two of the officers, Officer Anthony D'Esposito and Officer Joseph Weldon, were in their squad

car near the Seth Low Houses, a housing project, when they saw two men riding bicycles on the sidewalk along Pitkin Avenue. Id. at 46, 131. D'Esposito radioed two other officers, Officer Arthur Umlauf and Sergeant John Portalatin, who were on bicycle patrol nearby, to alert them that D'Esposito and Weldon were about to stop the two men to give them a ticket for riding their bicycles on the sidewalk. Id. at 47, 132, 145, 189. Weldon, who was driving, pulled his squad car alongside the men and got their attention by hitting his horn, which produces a brief siren-like sound. Id. at 47, 132. At the same time, D'Esposito rolled down his window and asked the men either to stop or to dismount their bicycles. Id. Umlauf and Portalatin arrived on the scene shortly after Weldon and D'Esposito. Id. at 49, 134–35, 146. Umlauf and Portalatin had arrested one of the men, Jose Rodriguez, for criminal trespass in the Seth Low Houses about two weeks earlier, on April 18, 2009. Id. at 148, 193. However, neither officer recognized Rodriguez. Id. at 148, 195.

When Rodriguez's compatriot, petitioner Jose Rios, dismounted his bicycle as requested, his pants tightened around his left front pocket, revealing to D'Esposito an "L-shape pointing down." Id. at 66. At that point, D'Esposito told his fellow officers something to the effect of "we may have a 265," NYPD code for the presence of a gun on the scene. Id. at 67–68, 134, 150. D'Esposito took hold of Rios's belt buckle and asked him if he was in possession of anything "he wasn't supposed to have." Id. at 68–69. Rios's response was, "[I]t's not loaded, it's only a misdemeanor." Id. at 69; see also id. at 134, 151 (corroborating that Rios said words to that effect). D'Esposito and Portalatin both frisked Rios's left front pocket. Id. at 71, 151, 195. Portalatin felt a hard object and recovered from Rios's pocket an unloaded .25-caliber Raven Arms pistol with an effaced serial number. Id. at 71, 109, 151–52, 195–96. Umlauf placed Rios in handcuffs. Id. at 77, 152. Both Rios and Rodriguez were taken to the stationhouse, although Rodriguez was

released not long thereafter with, according to police, a summons for riding his bicycle on the sidewalk. Id. at 77–78, 135–36, 152, 196. D'Esposito called the NYPD evidence collection unit to request that they fingerprint the gun recovered from Rios, but nobody from that unit responded and the gun was never tested for fingerprints. Id. at 109, 203–04. On June 4, 2009, a federal grand jury indicted Rios on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). United States v. Rios, No. 09-CR-369 (CBA), D.E. # 6.

## II.    The Suppression Hearing

Prior to trial, Rios moved to suppress the firearm recovered from him during his arrest as well as his statement that "it's not loaded, it's only a misdemeanor." United States v. Rios, No. 09-CR-369 (CBA), D.E. # 9. As to the gun, he argued: (1) that the police lacked probable cause or reasonable suspicion to stop him because he was not riding his bicycle on the sidewalk; and (2) that, in any event, the police lacked reasonable suspicion to frisk him because they could not plausibly have seen the gun in his pocket. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 9-3, ¶¶ 4–5. As for the statement, he claimed: (1) that it was the fruit of an unlawful arrest; and (2) that it was inadmissible because it was the product of a Miranda violation. Id. ¶¶ 7–10. The government disputed each of these contentions. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 12 at 4–9. The late Judge Charles P. Sifton, who presided over the pretrial proceedings and trial, held a suppression hearing on July 27, 2009. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 16. Three of the four officers—D'Esposito, Umlauf, and Portalatin—testified at the hearing. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 62 at 6–57 (D'Esposito), 58–73 (Portalatin), 73–84 (Umlauf). Rios did not testify and instead relied on statements set forth in an affidavit. Id. at 3. The facts the officers testified to were substantially the same as those outlined

above, id. at 6–84, and Judge Sifton denied Rios's suppression motion, United States v. Rios, No. 09-CR-369 (CBA), D.E. # 33.

After the suppression hearing, Rios sought to replace Michael Weil, his appointed counsel. He expressed dissatisfaction with his performance at the hearing, the rigor of his investigation, and his efforts to consult experts. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 23. At a hearing on August 24, 2009, Judge Sifton declined to appoint new counsel, finding that Rios's complaints did not merit it. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 131 at 2–4. That same day, Rios moved to have Judge Sifton reopen the suppression motion in light of newly discovered evidence that allegedly undermined the government's version of events, including that Umlauf had arrested Rodriguez two weeks before he arrested Rios and Rodriguez together. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 36. At a hearing three days later, on August 27, 2009, Judge Sifton agreed to consider reopening Rios's suppression motion after trial. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 132 at 4.

## III.    The Trial

At trial, the four arresting officers testified. Trial Tr. 34–125 (D'Esposito), 125–41 (Weldon), 141–84 (Umlauf), 185–207 (Portalatin). They testified chiefly to the events surrounding Rios's arrest. In addition, the government called NYPD Detective Lawrence Walsh as a fingerprint expert, who testified to the challenges of lifting fingerprints from guns, which the government hoped would explain why an NYPD forensics team did not respond to the request to dust the gun found on Rios. Id. at 228–46.

Although Weil had considered calling a DNA expert, he ultimately decided not to do so. Id. at 211, 249. Weil did, however, call a witness, Robert Cassidy, a clerk at the New York City Criminal Court. Id. at 261–70. Cassidy testified that the court never received the summons the

arresting officers claimed they issued to Rodriguez for riding his bicycle on the sidewalk. Id. at 266–68. The defense offered that testimony to advance its theory that issuance of the summons was part of a ruse to hide from Rios that his bicycling companion was a police informant who had alerted police to Rios's possession of a handgun. Id. at 305–06. Also in support of this theory, the defense entered into evidence a SPRINT report, a document that memorializes and provides data on, among other things, 911 calls. Id. at 119–20. According to Weil, the SPRINT report showed that just minutes before police stopped Rios and Rodriguez, a civilian had called police about an issue in the area where the stop took place. Id. at 303–04. Weil surmised that the caller was Rodriguez informing police that they should stop and search Rios. Id. at 305–06.

## IV.    The Verdict, Post-Trial Motions, and Sentencing

On September 3, 2009, the jury returned a verdict of guilty on the single charged felon in possession count. Id. at 366–68. After trial, Rios renewed his motion to reopen the suppression hearing and reconsider his motion to suppress. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 57. On September 29, 2009, Judge Sifton granted the motion to reconsider but, on reconsideration, again denied Rios's suppression motion. He concluded that the evidence adduced at trial and included in Rios's post-trial submissions did not alter his original determination. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 58. Prior to sentencing, Rios again moved to replace Weil as counsel. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 64. Because Rios's post-trial motion for new counsel raised issues that created a potential conflict for Weil, this Court excused Weil and appointed Alexander Eisemann to represent Rios going forward. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 68, D.E. # 117 at 6–7. With new counsel, Rios again sought to reopen his suppression hearing and asked to be granted a new trial, claiming Weil's representation of him at trial was ineffective. See United States v. Rios, No. 09-CR-369

(CBA), D.E. # 77–79. The Court denied both motions following oral argument. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 83.

On September 9, 2010, Rios again moved for a new trial. See United States v. Rios, No. 09-CR-369 (CBA), D.E. # 92, 99–101. He alleged that the government had failed to disclose Brady material, specifically, recordings or transcripts of the 911 call referenced in the SPRINT report introduced at trial. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 92. Rios claimed the substance of that 911 call would show that police stopped him because Rodriguez had told them Rios had a gun, and that, in turn, would contradict testimony given by the NYPD officers at the suppression hearing and at trial. Id. ¶¶ 4–6. Rios also claimed new evidence contradicted trial testimony that officers had tried but failed to recover video from the surveillance cameras at a recycling facility near the scene of the stop, which may have captured the events leading to Rios's arrest. United States v. Rios, No. 09-CR-369 (CBA), D.E. # 101 at 5–6. Specifically, an employee at the recycling facility said video from the cameras was readily available but police had never asked for copies. Id. at 6. In addition, Rios pointed to other information that he believed contradicted the officers' testimony: (1) a witness at the recycling plant said only one of the two bicyclists police stopped was riding his bicycle on the sidewalk; and (2) a statement provided by Rodriguez to Rios's investigator suggested that officers on bicycles stopped the men, with the squad car arriving only later. Sentencing Tr. at 12–19. The Court held that this evidence did not justify reopening the suppression motion or the issuance of subpoenas to facilitate further investigation by Rios. Id. at 19–20.

On December 10, 2010, this Court sentenced Rios. Rios had at least three prior felony convictions, two for attempted burglary and one for assault in the second degree. Id. at 24–26. Accordingly, Rios faced a mandatory minimum sentence of 15 years in prison under 18 U.S.C.

§ 924(e)(1). Id. at 38. That designation also rendered him an "armed career criminal" under the Sentencing Guidelines. U.S.S.G. § 4B1.4(a) (designating any defendant subject to 18 U.S.C. § 924(e) an armed career criminal). Rios disputed that his prior convictions merited application of § 924(e) or U.S.S.G. § 4B1.4(a). Id. at 22–23. However, his attorney acknowledged that he was "satisfied that the probation department had gotten it right." Id. at 23.

The Court agreed and found that the Probation Department had appropriately calculated the sentencing guidelines range at 235 to 293 months. Id. at 26–27. However, after consideration of the sentencing factors in 18 U.S.C. § 3553(a), the Court departed downward from that range, sentencing Rios principally to the mandatory minimum of 15 years in prison. Id. at 38.

## V.    Direct Appeal

Rios appealed his conviction to the United States Court of Appeals for the Second Circuit. After Rios filed his notice of appeal, Rios's sentencing counsel, Eisemann, asked to be relieved because his relationship with Rios had deteriorated such that he believed he could no longer represent him effectively. Mot., United States v. Rios, No. 11-212 (2d Cir. Aug. 23, 2011), D.E. # 23. The Second Circuit granted the motion and appointed Lisa A. Cahill to represent Rios on appeal. Mot. Order, United States v. Rios, No. 11-212 (2d Cir. Aug. 29, 2011), D.E. # 25. On appeal, Rios argued that the district court erred in declining to reopen his suppression motion despite evidence developed prior to and during his trial. Appellant Br., United States v. Rios, No. 11-212 (2d Cir. Jan. 9, 2012), D.E. # 39. In a Summary Order dated October 12, 2012, the Second Circuit disagreed, finding that the district court had not clearly erred in adhering to its initial determination, despite the emergence of new information after its decision. Summ. Order at 5–6, United States v. Rios, No. 11-212 (2d Cir. Oct. 12, 2012), D.E. # 86. The Second Circuit therefore affirmed Rios's conviction.

Rios then sought rehearing by the panel or by the en banc Second Circuit. He argued that the court lacked jurisdiction because the federal agent who swore out the criminal complaint against Rios did not satisfy the requirements of Article III standing. Petition for Reh'g/Reh'g En Banc at 3–5, United States v. Rios, No. 11-212 (2d Cir. Nov. 21, 2012), D.E. # 97. In the meantime, Rios's attorney, Cahill, for privileged reasons she did not disclose, had informed Rios that she would not bring this motion and sought permission to withdraw as Rios's attorney. Mot., United States v. Rios, No. 11-212 (2d Cir. Nov. 19, 2012), D.E. # 89. The court permitted her to withdraw. Mot. Order, United States v. Rios, No. 11-212 (2d Cir. Nov. 21, 2012), D.E. # 94. The court subsequently denied Rios's motion for rehearing, Order, United States v. Rios, No. 11-212 (2d Cir. Jan. 23, 2013), D.E. # 102, and its mandate issued on January 31, 2013, United States v. Rios, No. 09-CR-369 (CBA), D.E. # 130.

## THE PETITION

In this habeas petition, Rios argues that he is entitled to relief from his sentence because: (1) the trial court lacked jurisdiction under Article III, (Pet. at 6); (2) the government violated his due process rights by failing to turn over Brady material, (id. at 8); (3) the government violated his right to confront witnesses against him by failing to provide the name of the individual who placed the call contained in the SPRINT record, (id. at 8); (4) the sentencing enhancements pursuant to 18 U.S.C. § 924(e) and the United States Sentencing Guidelines were invalid because "mere possession" is not considered a violent crime, (id. at 8); (4) the sentencing enhancement pursuant to § 924(e) was unconstitutional because it was neither included in his indictment nor found beyond a reasonable doubt by a jury, (id. at 8, 9). In addition, he premises a number of claims on the ineffectiveness of his trial counsel, Michael Weil; his sentencing counsel, Alexander E. Eisemann; and appellate counsel, Lisa A. Cahill. He argues that those attorneys were ineffective:

8

(1) for failing to raise the above-mentioned claims; (2) for failing to properly investigate additional evidence; (3) for failing to properly question certain witnesses; (4) for failing to acquire fingerprint or DNA experts; and (5) for abandoning him. (See id. 4–5). The government responded to Rios's petition on January 2, 2014, (D.E. # 8 ("Gov't Opp.")), and on February 3, 2014, Rios filed a response, (D.E. # 9 ("Pet. Resp.")).

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner can obtain post-conviction relief if his sentence "(1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." Adams v. United States, 372 F.3d 132, 134 (2d Cir. 2004). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Yick Man Mui v. United States, 614 F.3d 50, 52 (2d Cir. 2010) (internal quotation marks and citation omitted). As a result, "section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal." Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992) (internal quotation marks and citation omitted). In addition, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause or actual prejudice, or that he is actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998) (internal quotation marks and citations omitted). Nonetheless, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003).

**DISCUSSION**

## I. Article III Standing

Rios claims that the district court lacked subject matter jurisdiction over his case because the complaining agent, Special Agent Ismael Hernandez of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, failed to demonstrate personal injury, causation, or redressability.[1] (Pet. at 6–7.) Rios is incorrect. Although injury in fact, causation, and redressability are predicates for federal court jurisdiction under Article III of the U.S. Constitution, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992), "there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts," Hugi v. United States, 164 F.3d 378, 380 (7th Cir. 1999). "That's the beginning and the end of the 'jurisdictional' inquiry" in criminal cases. Id.; see also 18 U.S.C. § 3231 (granting federal district courts original jurisdiction over violations of federal crimes); United States v. Daniels, 48 F. App'x 409, 418 (3d Cir. 2002) ("As sovereign, the United States has standing to prosecute violations of valid criminal statutes."). Accordingly, the Court rejects Rios's contention that he is entitled to relief because the trial court lacked jurisdiction under Article III.

## II. Brady Materials

Rios also claims that the government failed to turn over two forms of evidence, transcripts or recordings of the 911 call behind the SPRINT report introduced at trial and surveillance tapes from a nearby recycling facility, thereby violating his due process rights.[2] (Pet. at 8; Pet. Resp. at

---

[1] Although Rios introduces this claim in the context of his ineffective assistance of counsel argument, to the extent it or Rios's other claims can be construed as freestanding, the Court addresses them as separate claims as well as in support of his ineffective assistance claim.

[2] Rios also claims that the government violated his due process rights by "us[ing] known perjured testimony." (Pet. at 8.) Rios's contention here falls into the category of "[a]iry generalities" and "conclusory assertions," which the Second Circuit has held "will not suffice" "to warrant an evidentiary hearing in the district court on a first § 2255 petition." Haouari v. United States, 510 F.3d 350, 354 (2d Cir. 2007). This line in Rios's petition likely refers to Walsh's fingerprint testimony, which Rios says constitutes "perjury" because he testified that "fingerprints cannot be obtained from a firearm." (Pet. Resp. at 10.) If that is what Rios means, he misreads Walsh's testimony. Walsh never

10

19–21.) As an initial matter, Rios did not raise this claim on direct appeal and suggests no valid reason why this claim is not therefore procedurally defaulted. See Bousley, 523 U.S. at 622. Even if it were not, it would fail on the merits.

Under Brady v. Maryland, 373 U.S. 83 (1963), "the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or to punishment." United States v. Certified Envtl. Servs., Inc., 753 F.3d 72, 91 (2d Cir. 2014) (internal quotation marks and citation omitted). "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." Id. (citing United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001)). "[E]vidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different, such that the failure to disclose undermines confidence in the verdict." Id. (quoting Cone v. Bell, 556 U.S. 449, 469–70 (2009)).

As an initial matter, it is only rank speculation that the 911 call or the tape from the recycling facility would show what defendant claims. Neither the call nor the tape has been produced. Here, Rios surmises that the transcript or recording of the 911 call would show that the officers who arrested him stopped him not because he was riding his bicycle on the sidewalk, but instead because an informant told them that he was carrying a gun. (Pet. Resp. at 3–4.) Although it seems unlikely that a call concerning Rios's criminal activity would tend to exculpate him, it might be useful to impeach the police witnesses. It is therefore possible that the 911 call could have been favorable to Rios in that sense.

---

testified that fingerprints cannot be obtained from a firearm. What Walsh said is that he did not dust the gun recovered from Rios because—given its physical condition and the fact that it was found in Rios's pocket—a forensic examiner would likely not be able to lift a fingerprint from the gun. Trial Tr. at 237–42.

However, favorability is not the end of the matter, and Rios's claim fails because the transcript or recording was not material. To make out its case, the government needed to show that Rios was knowingly and intentionally in possession of the gun they found on him. See United States v. Taylor, 475 F.3d 65, 68 n.2 (2d Cir. 2007). Even if the transcripts or recordings of the 911 calls undermined the officers' credibility in some general way, it would do nothing to refute their core testimony. The 911 call, assuming it reveals what Rios hopes it will, would not contradict police testimony that they found a gun in Rios's pocket. Nor would it controvert testimony that Rios made statements suggesting he knew the gun was in his pocket. Even if the issue were suppression, as the Second Circuit noted in denying Rios's direct appeal, if anything, a phoned-in tip alerting police to Rios's involvement in criminal activity enhances the officers' justification for stopping Rios. Summ. Order at 5, United States v. Rios, No. 11-212 (2d Cir. Oct. 12, 2012), D.E. # 86. The transcripts and recordings were therefore not Brady material.

Rios also seems to believe that surveillance tapes from the recycling facility would exculpate him insofar as they would show that he was not riding his bicycle on the sidewalk. Rios acknowledges, however, that the government was never in possession of these tapes. (Pet. Resp. at 4.) The prosecution has no obligation with respect to material not in the government's possession. United States v. Canniff, 521 F.2d 565, 573 (2d Cir. 1975) ("Clearly the government cannot be required to produce that which it does not control and it never possessed or inspected."). The surveillance tape was therefore not Brady material. Rojas v. Woods, No. 07-CV-6687, 2009 WL 4639620, at *2 (S.D.N.Y. Dec. 3, 2009). Accordingly, the Court rejects Rios's contention that he is entitled to relief because the government failed to turn over Brady material.

## III. Confrontation Clause

Rios also claims that the government's failure to turn over transcripts or recordings of the 911 call behind the SPRINT report introduced at trial violated his "right to confront the witness who called." (Pet. at 8; Pet. Resp. at 2, 5, 17–18.) Once again, Rios did not raise this claim on direct appeal and suggests no valid reason why that claim is not therefore procedurally defaulted. See Bousley, 523 U.S. at 622. Even if it were not, it would also fail on the merits.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Although Rios appears to believe the Confrontation Clause applies to all individuals who speak against him, its protections are limited to statements admitted into evidence at trial. See Crawford v. Washington, 541 U.S. 36, 43 (2004). In this case, the government did not introduce any evidence or testimony regarding a 911 call. In fact, the only reference to this call at trial was made by Rios's counsel. Trial Tr. at 299, 304. Where, as here, an individual's statements are not admitted into evidence, there can be no Confrontation Clause violation. See Yushuvayev v. United States, 532 F. Supp. 2d 455, 475–76 (E.D.N.Y. 2008) (holding that the Confrontation Clause does not require the government to identify its cooperating witnesses in an indictment); Perez v. Phillips, No. 04-CV-2966 (GEL), 2006 WL 3432245, at *2 (S.D.N.Y. Nov. 28, 2006) (holding a Confrontation Clause claim was "entirely frivolous" where confidential informant's alleged statements to police were not admitted into evidence in the prosecution's case). Accordingly, the Court rejects Rios's contention that he is entitled to relief because the government violated his rights under the Confrontation Clause.

## IV.    Sentencing Enhancement

Rios also challenges this Court's enhancement of his sentence pursuant to 18 U.S.C. § 924(e). Individuals, like Rios, convicted of violating § 922(g) face a statutory maximum sentence of ten years. 18 U.S.C. § 924(a)(2). Section 924(e), however, imposes a mandatory minimum sentence of fifteen years where a person is convicted of violating § 922(g) and has three prior convictions for a violent felony or serious drug offense. Id. § 924(e)(1). The Court previously granted his petition in part on the ground that one of his prior convictions did not constitute convictions for a violent felony or serious drug offense. (D.E. # 25.) The Court therefore need not address his remaining claims.

## V.    Ineffective Assistance of Counsel

Rios raises a host of claims alleging ineffective assistance by his trial counsel, sentencing counsel, and appellate counsel. None entitles him to relief. "To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). The same standard applies in assessing the effectiveness of appellate counsel. See Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992). Because the Strickland standard is conjunctive, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697.

"'The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error.'" Pitcher, 559 F.3d at 123 (quoting Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)). "[W]hen reviewing an ineffective-assistance-of-counsel

claim, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Woods v. Donald, 135 S. Ct. 1372, 1375 (2015) (internal quotation marks omitted). Because "[t]here are countless ways to provide effective assistance in any given case," Strickland, 466 U.S. at 689, the lack of success of a chosen strategy should not cause a court to second-guess an attorney's judgments, Cuevas v. Henderson, 801 F.2d 586, 590 (2d Cir. 1986). Although counsel has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," that duty does not "compel defense counsel to investigate comprehensively every lead or possible defense." Greiner v. Wells, 417 F.3d 305, 320–21 (2d Cir. 2005) (internal quotation marks and citations omitted).

### a.    Meritless Arguments

Several of Rios's claims can be dealt with at the outset as to all three attorneys. "[F]ailure to make a meritless argument does not amount to ineffective assistance." United States v. Regalado, 518 F.3d 143, 149 n.3 (2d Cir. 2008) (alterations omitted). Rios's various attorneys were therefore not ineffective for failing to raise Rios's Article III, Brady, Confrontation Clause, and sentencing enhancement claims. Those arguments are, and were at the time, plainly without merit. See Parts I–IV.

### b.    Trial Counsel

Rios claims that his trial counsel, Michael Weil, rendered ineffective assistance for three reasons beyond those already determined to be meritless. First, he claims that after the suppression hearing, communication between Weil and Rios broke down completely. (Pet. at 4) Second, he alleges that Weil failed to investigate properly because he (1) refused to obtain Rodriguez's phone records, 911 transcripts, and surveillance video that may have shown Rios's arrest; (2) refused to properly question Rodriguez; and (3) refused to properly question employees of the recycling plant

who may have witnessed Rios's encounter with police. (Id.) Third, Rios says Weil failed to acquire fingerprint or DNA experts. (Id.)

First, the breakdown in communication between Rios and Weil appears to arise from Rios's contention that Weil did not do everything Rios told him to do, including asking particular questions of witnesses at trial. (Pet. Resp. at 9.) However, it is certainly well within an objective standard of reasonableness for an attorney to decline to engage in rote adherence to his client's strategic decisions. Courts considering counsel's conduct often turn to norms of practice, such as the American Bar Association ("ABA") standards, for guidance. Strickland, 466 U.S. at 688; see also Greiner, 417 F.3d at 321. Although attorneys have a duty to "consult with the client as to the means by which [the client's objectives] are to be pursued," Model Code of Prof'l Conduct R. 1.2(a) (2013), "[s]trategic and tactical decision," such as "what witnesses to call," "what motions and objections should be made," and "what and how evidence should be introduced," are generally left to defense counsel's discretion, ABA Criminal Justice Standards for the Defense Function, Standard 4-5.2(d) (4th ed. 2015).

Here, the decisions Rios complains of are precisely the sort generally left to a defense attorney's discretion and Weil clearly fulfilled his obligation to communicate and consult with his client. Rios notes that, "[d]uring trial, after my attorney would question a witness, he would come to the defense table and ask me if I had any questions." (Pet. Resp. at 9.) Rios adds that Weil would reject Rios's requests "each and every time." (Id.) But the record does not support that contention. If anything, it appears from the trial transcript that Weil's cross-examination was influenced by Rios's requests. See, e.g., Trial Tr. 207 (Weil asks for "a moment to confer," then returns with a final question for Portalatin regarding the meaning of a code used in a SPRINT report). Rios also suggests that Weil asked him if he knew of any motions or case law that Weil

could use. (Pet. Resp. at 8.) Rios apparently means for that fact to denigrate Weil's competence as an attorney. However, the Court views this as a marker of Weil's commitment to consulting with Rios and preserving all arguments for appeal.

Second, Rios's claim that Weil failed to conduct a proper investigation fails because Rios does not show that he suffered prejudice. In other words, he has not shown "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Pitcher, 559 F.3d at 123 (citing Strickland, 466 U.S. at 694). The line of investigation Rios believes Weil ought to have pursued supports the theory Weil put forth at trial—that the police did not happen upon Rios by chance. The fruits of such an investigation would have meant Rios would have access to Rodriguez's phone records, the 911 call transcripts, and the statements of Rodriguez and recycling plant workers. At best, this evidence might have shown that a tip had made police aware Rios had a gun before they stopped him. (See Pet. Resp. 6–7.) As discussed above, this evidence would be insufficient to undermine the government's case against Rios. See supra Part II; Summ. Order at 5–6, United States v. Rios, No. 11-212 (2d Cir. Oct. 12, 2012), D.E. # 86.

As to the surveillance tape and the recycling plant employee who said he only saw one of the two bicyclists on the sidewalk, this evidence also would not have undermined the officers' testimony. That evidence would provide only a partial view of the circumstances leading up to Rios's arrest. D'Esposito and Weldon testified that they saw Rios and Rodriguez ride their bikes on the sidewalk across at least two city blocks. Trial Tr. 46, 131–32. There is no evidence in the record to suggest that the recycling plant employee saw or the surveillance video captured the entirety of what the officers testified to.

Third, Rios's claim pertaining to experts fails chiefly for the same reason—the absence of prejudice. A fingerprint expert may have called into question some of the claims made by Walsh,

the government's fingerprint expert. A defense fingerprint expert might, for example, have suggested that Walsh overstated how hard it is to lift fingerprints from the gun recovered from Rios's pocket. See Trial Tr. 239–42. Testimony along those lines would do nothing more than set up a battle of the experts on a fairly minor point—whether it was reasonable for the NYPD's forensic unit to decline to dust the gun found on Rios for fingerprints. This does not rebut the testimony by the arresting officers going to whether Rios was knowingly and intentionally in possession of the gun. Taylor, 475 F.3d at 68 n.2. Nor does it hurt those officers' credibility much, if at all. Their testimony was that they requested fingerprints but nobody from the fingerprinting unit responded to their request. See Trial Tr. 109, 124, 203–04. Their testimony was not that they unilaterally declined to fingerprint the gun.

Weil's decision not to call a DNA expert likewise did not prejudice Rios. Like fingerprints, DNA was largely immaterial to the government's case. The DNA expert was expected to say, in effect, that the gun could have been tested for DNA and, in some states, would have been as a matter of course. That does not contradict testimony as to the core elements of the charged crime. It is not reasonably probable that a DNA expert or a fingerprint expert would have resulted in a different outcome for Rios.

Prejudice aside, it is also far from clear that Weil's decision was so unreasonable as to be legally deficient. Weil considered calling a DNA expert, but as the trial evolved he made the strategic decision not to. Trial Tr. 249. Selecting witnesses falls squarely within the kind of decision that is generally left to trial counsel's discretion. See ABA Criminal Justice Standards for the Defense Function, Standard 4-5.2(d) (4th ed. 2015). Here, although Weil did not expressly say why he decided not to call an expert, the record makes his decision seem eminently reasonable. It was unclear how the expert would advance Rios's case. Judge Sifton had suggested as much.

The DNA expert, he said, struck him as "more than needed and potentially confusing." Trial Tr. 220. Judge Sifton had, moreover, told Weil that he would limit the scope of what the expert could testify about. Id. at 219–20. Weil could reasonably have determined, given how the trial evolved, that it made more strategic sense to forego experts and rely on cross-examination. Indeed, Weil during his cross-examination of the government's fingerprint expert, elicited testimony that the gun could have been fingerprinted or tested for DNA. See Id. at 246, 311. Weil's representation of Rios was therefore not unconstitutionally defective.

### c.   Sentencing Counsel

Rios also contends that his sentencing counsel, Alexander E. Eisemann, was ineffective because: (1) he refused to investigate and instead asked Rios if his family had money for an investigator; and (2) he abandoned Rios after sentencing and therefore did not file an appeal for Rios.   (Pet. at 6.)   As to investigation, Eisemann did a substantial amount of additional investigating. See, e.g., Sentencing Tr. 4–15. But the Court need not decide whether or not the scope of his investigation fell within the wide bounds of objective reasonableness, which it almost certainly did. That is because, as already discussed with respect to Weil, there is no reason to believe that any additional investigation would have led to a different outcome for Rios. As to Eisemann asking Rios if his family had money for an investigator, Eisemann addressed that issue to the Court's satisfaction when it first arose. See United States v. Rios, No. 09-CR-369 (CBA), D.E. # 115. Nothing Rios raises now contradicts Eisemann's earlier explanation. Lastly, as to abandonment, after filing Rios's notice of appeal, Eisemann requested to be relieved because he felt he could no longer effectively represent Rios, and the Second Circuit granted his request. See United States v. Rios, No. 09-CR-369 (CBA), D.E. # 112. That is not abandonment. Eisemann's representation of Rios was therefore not unconstitutionally defective.

19

**d.    Appellate Counsel**

Finally, Rios argues that his counsel on appeal, Lisa A. Cahill, was ineffective because: (1) she refused to raise many of the issues Rios now raises; (2) she abandoned Rios after his appeal; and (3) she refused to investigate his case. (Pet. at 5–6, 8.) As to his first claim, appellate "[c]ounsel is not obliged to advance every nonfrivolous argument that could be made," Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); see also Jones v. Barnes, 463 U.S. 745, 751 (1983) (stating that an indigent defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points"), and certainly need not raise arguments that are frivolous. Like Eisemann, Cahill did not abandon Rios. She sought to withdraw after Rios lost on appeal, and the Second Circuit permitted her to. Mot. Order, United States v. Rios, No. 11-212 (2d Cir. Nov. 21, 2012), D.E. # 94. There is no reason to believe further investigation would have advanced Rios's appeal, particularly given that federal appellate courts generally rely on a closed record. Accordingly, Cahill's representation of Rios was not unconstitutionally defective.

**VI.    Discovery Motions**

In addition to his petition, Rios has filed a number of motions to compel disclosure of the transcripts of the 911 call received shortly before his arrest. (D.E. # 2, 10, 12, 17-1.) "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). However, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure." Rules Governing Section 2255 Proceedings in the United States District Courts, Rule 6(a). "Good cause" exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Harris

v. Nelson, 394 U.S. 286, 300 (1969). Rios's motions seek evidence that, as discussed above, would not advance his claims even if it supported the version of events he suggests it would. Rios has therefore not shown good cause for the discovery he requests and his motions are therefore denied.

## CONCLUSION

For the above reasons, the Court denies the remainder of Rios's petition. Rios's requests for discovery, (D.E. # 2, 10, 12, 17-1), are denied. Since Rios has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment accordingly, terminate all pending motions, and close the case.

SO ORDERED.

Dated: July    7    , 2016
       Brooklyn, New York

s/Carol Bagley Amon

Carol Bagley Amon
United States District Judge